# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LOIS TRASK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 6907 |
| | ) | |
| THOMAS BOYD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions to dismiss certain claims. For the reasons stated below, the motions to dismiss are granted.

## BACKGROUND

In her *pro se* second amended complaint, Plaintiff Lois Trask (Trask) presents a disjointed series of unrelated facts. Since Trask is proceeding *pro se*, the court will liberally construe her complaint. The court notes that on several occasions in these proceedings, the court offered to appoint counsel for Trask, and Trask indicated on each occasion that she wanted to continue to proceed *pro se*.

Trask makes various allegations in the second amended complaint relating to being arrested and detained. Trask contends that false statements were made accusing her of attempting to "gain access" to the chambers of a state court judge at the Daley Center in Chicago, Illinois (Daley Center) on July 12, 2010. (SA Compl. Par. 12A). Trask further alleges that she was arrested by Defendant Thomas Boyd (Boyd) for criminal trespass to land at the Daley Center. Trask contends that Boyd used excessive force when effectuating the arrest, and that due to Boyd's actions, Trask became "weak in the knees" and fell to the floor. (SA Compl. Par. 44). Boyd allegedly told Trask that if she did not get up, he would charge her with resisting arrest. Trask alleges that she was "attacked, battered, handcuffed" and taken to Defendant Northwestern Hospital (Hospital). (SA Compl. Par. 4D, 6A). Trask also contends that while being moved after her arrest, Boyd made her bump her head on the wall of an elevator. Defendant Donna Pickens (Pickens), who is a Cook County Sheriff's Deputy, allegedly retrieved documents left by Trask in a state court judge's clerk's office. Pickens also allegedly falsely accused Trask of being in a restricted area at the Daley Center.

Trask contends that when she was taken to the hospital after her arrest, Defendant Theresa Castro (Castro), who is a Sheriff's Deputy, "used excessive force on the plaintiff with her body while she handcuffed plaintiff to a wheelchair," and

that Castro refused to let Trask use the toilet. (SA Compl. Par. 10). Trask claims that Castro conspired with Boyd and other Defendants "to receive overtime payment . . . ." (SA Compl. Par. 10A). Trask also contends that while Trask was being detained, Defendant Olivia Ortiz (Ortiz) "harassed" Trask and "refused to allow plaintiff to use the toilet." (SA Compl. Par. 13). Trask also claims that while at the Hospital, an unknown doctor falsified medical records to indicate that Trask refused medical services. Trask also claims that an unknown Defendant nurse gave Trask medication without a doctor's permission and conspired with others to have Trask "placed" in the Hospital "for no just cause." (SA Compl. Par. 21). Trask also contends that other treatment by staff at the Hospital violated her constitutional rights.

Trask also makes various allegations relating to certain proceedings in state court that have occurred since 1970, which Trask contends shows that there were "insufficiencies of the court and it's system. . . ." (SA Compl. Par. 4C). Trask references certain probate proceedings and alleges that she was "retaliated against by many judges, sheriffs and lawyers for her efforts Probate Case No. 02 P 2414 a case that Lois opened." (SA Compl. Par. 4). Trask contends that she was "not allowed to see or be with her father even after death. . . ." (SA Compl. Par. 4B). Trask also claims that she tried to see her father in February 2003, but that he was "tortured"

and "tied down" and not allowed to see his children.  (SA Compl. Par. 4E, 89A).

Trask contends that Defendants conspired to cause her father's death.  (SA Compl.

Par. 89C).

Trask also references a wrongful death case in state court.  Trask contends that

Defendant Judge William Maddux (Judge Maddux) is a state court judge who made

certain rulings in a "wrongful death case regarding the death of plaintiff's mother. . .

."  (SA Compl. Par. 14A).  Trask also refers to her mother's alleged "sudden death

from the hands of unlicensed physicians. . . ."  (SA Compl. Par. 89).

Trask also references divorce and child support proceedings in state court.

(SA Compl. Par. 4D, 87, 98).  Trask alleges that Defendant Judge Kathy Flanagan

(Judge Flanagan) is a state court judge who made certain rulings that violated Trask's

constitutional rights and that "all Social Security benefits for 8 years were not given

to Lois because of the Conspiracy and Retaliation by Defendant Flanagan of the

courts and it's Politics."  (SA Compl. Par. 15C).  Trask also contends that Judge

Flanagan conspired with Judge Maddux to harm Trask.  Trask further alleges that

Defendant Judge Jennifer Duncan-Brice (Judge Duncan-Brice) is a state court judge

who sat in stead of Judge Flanagan on one occasion and that Judge Duncan-Brice

conspired with other Defendants in violating Trask's constitutional rights.  Trask also

alleges that Defendant Judge Kathleen Kennedy (Judge Kennedy) is a state court

judge who used "prejudice ways to slander the plaintiff and keep her from receiving her ordered child support arrearage." (SA Compl. Par. 17A). Judge Kennedy also allegedly "has taken control of Plaintiff's business affairs without her consent and has the 1968 GMC School Bus in her control," and has "forbidden Plaintiff to receive all rights in her written and composed song 'IF YOU KNOW HOW I FEEL.'" (SA Compl. Par. 85). Trask also alleges that Defendant Judge James Riley (Judge Riley) and Defendant Judge Moshe Jacobius (Judge Jacobius) are state court judges who violated Trask's constitutional rights.

Trask also references certain eviction proceedings in state court. (SA Compl. Par. 99C). Trask alleges that Judge Maddux "has details . . . which influenced" police to "invade" Trask's residence several weeks after her arrest, "with weapons drawn and placing plaintiff and her family in a homeless situation. . . ." (SA Compl. Par. 61). Trask also alleges that Defendant Judge Mary Ellen Coughlan (Judge Coughlan) is a state court judge who "took the I.D. from the plaintiff in open court," conspired with other Defendants to "tear down the doors of plaintiff's parents home," and "conspired to have the plaintiff arrested and placed in a Mental Institution. . . ." (SA Compl. Par. 99B). Trask also names as a Defendant James C. Pullos (Pullos), an Assistant State's Attorney, who represented the state in certain prior proceedings in which Trask was involved and who is an attorney representing certain Defendants

in this case.  Trask contends that Pullos conspired to violate Trask's constitutional rights.  Trask also contends that Pullos has a conflict of interest in this case.

Defendant James Adamson (Adamson) was allegedly an attorney who works for Defendant Swanson, Martin & Bell, LLP (SMB) and allegedly represented Loyola Medical Center in a legal proceeding in which Trask was involved. Adamson allegedly conspired with other Defendants to "harm the plaintiff for standing up for her Rights."  (SA Compl. Par. 97A-B).  Trask also alleges with respect to certain proceedings in state court that Defendant Lawrence Helms (Helms), who allegedly works for SMB, "typed in a statement he wrote to the A.R.D.C. in an attempt to discredit Plaintiff. . . ."  (SA Compl. Par. 75).

Trask also makes allegations relating to additional courtroom security brought in to supervise her in state court proceedings.  Judge Maddux allegedly "allowed" six officers to stand behind Trask when she appeared at a court hearing, and Trask contends that she did not do anything to warrant such security precautions.  Trask also contends that, when she appeared at other court hearings, Boyd, Castro, and Judge Flanagan also requested "extra security" to be present in the courtroom due to Trask's presence.  (SA Compl. Par. 73).

Trask includes in her second amended complaint claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging that she was subjected to cruel and unusual

punishment (Count I), claims alleging that her rights under the Illinois constitution were violated (Count II), and Section 1983 claims alleging unlawful arrest and unlawful restraint (Count III). Trask also includes in her second amended complaint state law intentional infliction of emotional distress claims, assault and battery claims, civil conspiracy claims, and fraud claims. (SA Compl. Par. 1, 51).

Defendants Judge Duncan-Brice, Judge Flanagan, Judge Maddux, Judge Kennedy, Judge Riley, Judge Jacobius, and Judge Coughlan (collectively referred to as "Judge Defendants") have moved to dismiss all claims brought against them. Defendants Thomas Dart (Dart), Boyd, Janice Prescott (Prescott), Andria Sims (Sims), Castro, Dickens, James Dillon (Dillon), Donnell Butler (Butler), Ortiz, Sherry Chatz (Chatz), and Pullos (collectively referred to as "Sheriff Defendants") have moved to dismiss certain claims brought against them. Defendants SMB, Catherine Basque Weiler, Alfred K. Murray, II, and Adamson (collectively referred to as "SMB Defendants") have moved to dismiss all claims brought against them. Helms has also moved to dismiss all claims brought against him.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1);

*see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.,* 78 F.3d 1208, 1210 (7th Cir. 1996)). The burden of proof in regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

'speculative level'" and "if they do not, the plaintiff pleads itself out of court."

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.

2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007));

*see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive

a motion to dismiss, the complaint "must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face," and that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations

omitted).

## DISCUSSION

I.  Judge Defendants

Judge Defendants argue that the claims brought against Judge Defendants

should be dismissed due to the failure to state a claim and for lack of subject matter

jurisdiction.  Under the *Rooker–Feldman* doctrine, a federal district court is barred

"from reviewing state-court judgments, over which only the United States Supreme

Court has federal appellate jurisdiction."  *Commonwealth Plaza Condominium Ass'n*

*v. City of Chicago*, 2012 WL 3734354, at *3 (7th Cir. 2012)(quoting *Crawford v.*

*Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011)).  In Trask's second amended complaint, she seeks to challenge the rulings made by Judge Defendants during state court proceedings.  The Seventh Circuit has made clear that district courts may not hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Commonwealth*, 2012 WL 3734354, at *3 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  In her second amended complaint, Trask makes statements as to her dissatisfaction with the results of certain proceedings in the state court legal system and she makes legal arguments as to why Judge Defendants' rulings should be overturned, such as that Judge Defendants lacked jurisdiction, or abused their discretion.  (SA Compl. Par. 4, 15L, 66, 80, 89, Sum.).  To the extent that Trask challenges the rulings made by Judge Defendants, such claims are barred by the *Rooker-Feldman* doctrine.  Nor has Trask shown that any exceptions to the doctrine are applicable in this case.  *See, e.g., Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995); *Taylor v. Federal National Mortgage Association*, 374 F.3d 529, 533-34 (7th Cir. 2004).

Trask also brings claims against Judge Defendants for alleged unethical conduct and involvement in various conspiracies against Trask.  Trask includes in

her second amended complaint incredible allegations concerning conspiracies among Judge Defendants and law enforcement officers, medical care providers, and private attorneys that span several unrelated legal proceedings and four decades. Such outrageous allegations lack any factual underpinnings and are factually frivolous. *See Edwards v. Snyder*, 478 F.3d 827, 829-30 (7th Cir.2007)(stating that "[a] claim is factually frivolous if its allegations are bizarre, irrational or incredible," and quoting *Denton v. Hernandez,* 504 U.S. 25, 33 (1992) for the proposition that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"). Trask does not allege facts in the second amended complaint that would suggest that Judge Defendants' involvement in alleged conspiracies constitutes anything more than Trask's fantastic speculation. Trask's conclusory and bizarre assertion that certain Judge Defendants conspired to cause the death of her father, (SA Compl. Par. 89C), is a good example of the factually frivolous type of "fanciful, fantastic, delusional, irrational, or wholly incredible" allegations presented in this case against Judge Defendants. *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 899 (7th Cir. 1997). In addition, even if the facts were not deemed to be factually frivolous, Trask fails to provide sufficient factual details to plausibly suggest a claim against Judge Defendants.

Even if Trask has presented sufficient facts to state a claim against any of

Judge Defendants, Judge Defendants enjoy absolute immunity in regard to claims brought against them for damages. *Snyder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004)(stating that "judges are entitled to absolute immunity from damages for their judicial conduct")(internal quotes omitted)(quoting *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001)). Trask alleges that Judge Defendants engaged in misconduct while performing their official duties as judges. Trask has not pointed to any relevant exception to Judge Defendants' absolute immunity that would provide a valid basis to recover damages from Judge Defendants. Therefore, Judge Defendants' motion to dismiss the claims brought against them is granted.

The court notes that Trask has made certain personal attacks against Judge Defendants in the second amended complaint by presenting certain opinions as to the personal lives of certain Judge Defendants and other judges who work at the Daley Center. (SA Compl. Par. 15J). Such unsupported and scandalous allegations are stricken pursuant to Federal Rule of Civil Procedure 12(f). Specifically, Paragraph 15J of the second amended complaint will be redacted on the docket to remove such allegations from the docket. Trask is warned that any future frivolous personal attacks made against any Defendant in this action may subject Trask to sanctions, including monetary sanctions and/or the dismissal of the instant action.

## II.  Sheriff Defendants

Sheriff Defendants argue that certain claims brought against Sheriff Defendants should be dismissed.

### A.  Section 1983 Claims brought against Sheriff Defendants

Trask indicates that she is bringing Section 1983 claims against Sheriff Defendants in both their official and individual capacities.  (SA Compl. 1).

#### 1.  Section 1983 Official Capacity Claims

Sheriff Defendants argue that the Section 1983 official capacity claims brought against Sheriff Defendants should be dismissed.  A claim brought against an individual in their official capacity is the same as a claim brought against the "entity of which the [individual] is an agent."  *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975 n.1 (7th Cir. 2000); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999)(stating that "[a] claim against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents").  For a Section 1983 *Monell* claim brought against a governmental entity, the plaintiff must establish "the existence of an 'official policy' or other governmental custom

that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 2012 WL 3240696, at \*4 (7th Cir. 2012)(quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)).  A plaintiff can show the existence of "an official policy through (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*

In the second amended complaint, Trask alleges facts that suggest that the Sheriff Defendants work for the Sheriff of Cook County.  Trask names Dart, the Sheriff of Cook County, as a defendant.  Trask merely in a conclusory manner alleges that Dart is responsible for personnel that work for him and that Dart did not properly train his staff.  (SA Compl. Par. 7, 19).  However, one isolated reference to an alleged failure to properly train individual defendants is not sufficient to state a *Monell* claim.  Trask does not allege that there was any policy, custom, or practice involved in the alleged training deficiencies with the individual Sheriff Defendants or that Dart was acting as a policy maker when he made any decisions that led to any alleged constitutional violations.  Trask fails to allege facts that would plausibly suggest that any governmental policy or practice was the moving force behind her

alleged constitutional deprivations.  Therefore, Trask has failed to allege sufficient facts to state a Section 1983 claim against any of Sheriff Defendants in their official capacities, and such claims are dismissed.

### 2.  Certain Individual Capacity Section 1983 Claims

Sheriff Defendants argue that the Section 1983 individual capacity claims brought against Defendants Dart, Dillon, Prescott, Butler, and Chatz should be dismissed.  Sheriff Defendants argue as to such Sheriff Defendants that Trask has not alleged personal involvement in the alleged misconduct.  In order for an individual to be liable pursuant to Section 1983, "a plaintiff must show the actor was 'personally responsible for the constitutional deprivation.'"  *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003)(quoting *Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 614 (7th Cir. 2002)).  In order for a supervisor to be held liable under Section 1983, "the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'"  *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)(quoting *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)).

In the instant action, as indicated above, as to Dart, Trask merely in a conclusory manner alleges that he is responsible for personnel that work for him and

that he allegedly did not properly train his staff. (SA Compl. Par. 7, 19). However, Trask does not allege that Dart ordered, approved, or condoned any alleged constitutional violations. As to Dillon, Trask merely alleges that Dillon is "in charge of handling inspection of complaints against the Cook County Sheriffs" and that at some undefined time he "refused to release a report under the Freedom of Information Act." (SA Compl. Par. 11). Dillon is not alleged to be personally involved in the arrest of Trask or any of the other alleged misconduct included in the second amended complaint. The vague allegation that at some point Dillon refused to release a report is not sufficient to plausibly suggest a constitutional violation. As to Prescott, Trask alleges that Prescott supervised certain Sheriff Defendants, that she was "negligent in not overseeing" certain Sheriff Defendants, and that she "was negligent" for not "correcting" the alleged constitutional violations. (SA Compl. Par. 9, 12). Prescott is not alleged to be personally involved in the arrest of Trask or any of the other alleged misconduct included in the second amended complaint. As to Butler and Chatz, there is no reference to Butler or Chatz in the second amended complaint other than in the caption. Thus, Trask has not presented allegations to plausibly suggest personal involvement in any alleged misconduct by Dart, Dillon, Prescott, Butler, and Chatz. To the extent that Trask has included conclusory allegations as to involvement by such Defendants in conspiracies, Trask has failed to

present sufficient facts to plausibly suggest involvement in a conspiracy. *Timberlake v. Deatrick*, 2012 WL 3139774, at *2 n.1 (S.D. Ind. 2012)(stating that "[a] mere assertion of conspiracy . . . is insufficient to reach the plausibility threshold," and that the plaintiff "allege[d] nothing more than conclusory assertions of conspiracy"); *Nicholson v. Synch Solutions*, 2012 WL 1992298, at *3 (N.D. Ill. 2012)(holding that a "speculative and conclusory allegation of a conspiracy must be rejected" at the motion to dismiss stage). Therefore, the Section 1983 individual capacity claims brought against the above-mentioned Defendants are dismissed.


### 3. Section 1983 Claims Brought Against Pullos

Sheriff Defendants move to dismiss all claims brought against Pullos. Trask alleges that Pullos engaged in misconduct in carrying out his official duties as an assistant state's attorney. (SA Compl. Par. 98A). Although Trask contends that Pullos "operated unprofessionally," and had a conflict of interest, Trask fails to allege facts to plausibly suggest that Pullos violated Trask's constitutional rights. (SA Compl. Par. 98). Trask fails to allege any personal involvement by Pullos in Trask's arrest or detention. Although Trask presents conclusory allegations as to the involvement of Pullos in certain conspiracies, such generalized allegations without factual underpinning are insufficient to state a Section 1983 claim against Pullos.

Therefore, the Section 1983 claims brought against Pullos are dismissed.


B.  State Law Claims Brought Against Sheriff Defendants

Sheriff Defendants argue that the state law claims brought against them are time-barred.  Tort claims brought under Illinois law against local government employees are subject to a one-year statute of limitations period.  *See Manning v. Sweitzer*, 2012 WL 4054411, at *6 (N.D. Ill. 2012)(stating that "[u]nder Illinois' Tort Immunity Act, claims against local governments and their employees are subject to a one-year statute of limitations," and that "[t]his applies even when the state law claims are joined with claims brought under § 1983").  In the instant action, Trask alleges that Sheriff Defendants engaged in misconduct relating to Trask's arrest and detention on or around July 12, 2010.  (SA Compl. Par. 4).  Trask did not bring the instant action until September 30, 2011, beyond the limitations period.  In addition, Trask's amended complaints were filed outside the limitations period.  Trask filed her first amended complaint adding new Defendants on March 2, 2012, and filed her second amended complaint adding new Defendants, on June 1, 2012.  Trask has not pointed to any equitable tolling doctrines that would excuse her untimely filing.  *See, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)(explaining equitable tolling doctrines).  Therefore, the state law claims brought against Sheriff

Defendants are time-barred.  The court also notes that Pullos is deemed a state employee under the law, and is protected by sovereign immunity in regard to the state law claims brought against him.  *See Kitchen v. Burge*, 2012 WL 346450, at *4-5 (N.D. Ill. 2012)(indicating that "the Illinois Court of Claims has exclusive jurisdiction over state law claims against [the defendant] ASA"); *Redd v. Dougherty*, 578 F. Supp.2d 1042, 1056 (N.D. Ill. 2008)(stating that "[s]tate sovereign immunity rules apply to state law causes of action brought in federal court against state officials" and that "[u]nder Illinois law, states' attorneys are considered state officials rather than county or local officials").  Therefore, the state law claims brought against Sheriff Defendants are dismissed.

## III.  SMB Defendants

SMB Defendants move to dismiss all Section 1983 claims and the state law civil conspiracy claims brought against them.

### A.  Section 1983 Claims Brought Against SMB Defendants

SMB argues that Trask has not alleged sufficient facts to state a Section 1983 claim against any of SMB Defendants.  For a Section 1983 claim brought "against a defendant who is not a government official or employee, the plaintiff must show that

the private entity acted under the color of state law." *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 822-23 (7th Cir. 2009). Under the state action doctrine, an action by a private party can be deemed an action under the color of state law if there is "such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Id.* (internal quotations omitted)(quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349-51 (1974)).

Trask alleges that SMB Defendants represented private parties in certain civil litigation. The allegations in the second amended complaint do not suggest that SMB Defendants were government actors acting under the color of state law. Nor has Trask presented allegations that would suggest that SMB Defendants had such a close nexus to any government actors that the actions of SMB Defendants should be treated as the actions of a government actor.

Trask also alleges that SMB Defendants conspired with government actors. However, Trask provides nothing more than vague and conclusory allegations as to SMB Defendants involved in conspiracies. Trask alleges, for example, in a conclusory fashion that Helms, who represented a client in a civil matter in 2005, conspired with Boyd, a law enforcement officer with no involvement in the 2005 matter, to "cause[] [Trask] to be falsely, arrested and or killed by" Boyd. (SA

Compl. Par. 93).  There are no supporting factual details in the second amended

complaint to support such an outlandish accusation.  Trask has failed to plead

sufficient facts to plausibly suggest that SMB Defendants conspired with government

actors.  *See, e.g.,Timberlake*, 2012 WL 3139774, at *2; *Nicholson*, 2012 WL

1992298, at *3.  Therefore, the Section 1983 claims brought against SMB

Defendants are dismissed.


### B.  State Civil Conspiracy Claims Brought Against SMB Defendants

SMB Defendants argue that Trask has failed to allege sufficient facts to state a

state civil conspiracy claim against any of SMB Defendants.  For a civil conspiracy

claim brought under Illinois law, a plaintiff must establish that there was "a

combination of two or more persons for the purpose of accomplishing by some

concerted action either an unlawful purpose or a lawful purpose by unlawful means."

*Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)(explaining that "[t]he

function of a conspiracy claim is to extend liability in tort beyond the active

wrongdoer to those who have merely planned, assisted or encouraged the

wrongdoer's acts").

In the second amended complaint, Trask merely provides conclusory

allegations as to SMB Defendants' involvement in certain conspiracies, which is

insufficient to plausibly suggest involvement in a conspiracy. *See, e.g, Timberlake*, 2012 WL 3139774, at *2; *Nicholson*, 2012 WL 1992298, at *3. Trask fails to present details to support her outlandish claims. Such conclusory statements are wholly incredible and are factually frivolous. Trask fails to provide sufficient allegations to plausibly suggest that SMB Defendants participated in any alleged conspiracies to violate Trask's constitutional rights. Nor has Trask presented allegations to plausibly suggest that SMB Defendants deprived Trask of any of her federal constitutional rights relating to access to the courts.

Trask does not allege any facts that would plausibly suggest that any of SMB Defendants were personally involved in Trask's arrest or detention, and thus Trask has failed to state claims for assault and battery against SMB Defendants. To the extent that Trask alleges that SMB Defendants engaged in misconduct that caused Trask emotional distress, Trask has not alleged sufficient specific details to plausibly suggest any violations of state law by SMB Defendants. In addition, to the extent that Trask seeks to bring a conspiracy claim against SMB Defendants pursuant to 42 U.S.C. § 1985(3), for the same reasons stated above in regard to the civil conspiracy claims, Trask has failed to allege sufficient facts to state a valid claim. *See Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)(stating that "[t]he function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors").

Finally, even if Trask had stated a valid state conspiracy claim or other state law claim against SMB Defendants, Trask alleges that the misconduct by SMB Defendants occurred in 2005, and thus the state law claims would be time-barred. Therefore, all state law claims brought against SMB Defendants are dismissed. Helms' motions to quash service of process, although meritorious, is stricken as moot.

IV.  Hospital Defendants

Trask alleges that Hospital, Defendant Dean Harrison, and Defendant unknown female nurse (collectively referred to as "Hospital Defendants") conspired with Sheriff Defendants to violate Trask's constitutional rights.  As with SMB Defendants, however, Trask fails to provide anything other than conclusory allegations and outlandish claims of conspiracies in which Hospital Defendants were allegedly involved.  *See, e.g, Timberlake*, 2012 WL 3139774, at *2; *Nicholson*, 2012 WL 1992298, at *3.  Trask has failed to allege facts to plausibly suggest that Hospital Defendants conspired with any government actors.

Trask also separately alleges in the second amended complaint that she did not receive proper medical care while being treated at the Hospital.  To the extent that Trask seeks to pursue some type of state law negligence claims against Hospital

Defendants relating to her treatment, such claims would not involve the same questions of law or fact or the same occurrences that are at issue in this action, which relates to alleged violations of Trask's constitutional rights during her arrest and detention. Thus, such claims would not be properly joined in the instant action. Fed. R. Civ. P. 20(a)(2). Therefore, all claims brought against Hospital Defendants are dismissed.

## V.  Claims Brought Against Thevathril

Trask includes as a Defendant in this action a Mr. Thevathril (Thevathril). However, other than the mention of Thevathril in the caption of the second amended complaint, Trask makes no other reference to him. Trask has failed to plausibly suggest any valid claim against Thevathril, and all claims brought against Thevathril are dismissed.

## VI.  Remaining Claims

Based on the above, the remaining claims in this action are the Section 1983 individual capacity excessive force claims, false arrest claims, unlawful detention claims, and condition of confinement claims brought against Boyd, Castro, Sims, Dickens, and Ortiz (collectively referred to as "Remaining Defendants"), which

relate to Trask's alleged arrest and detention on July 12, 2010.  Remaining

Defendants are given until October 23, 2012, to answer or otherwise plead to the

second amended complaint.


## CONCLUSION

Based on the foregoing analysis, Defendants' motions to dismiss are granted.

All claims brought against Judge Defendants, SMB Defendants, Hospital

Defendants, Pullos, and Thevathril are dismissed.  All Section 1983 official capacity

claims and all state law claims brought against Sheriff Defendants are dismissed.

The Section 1983 individual capacity claims brought against Dart, Dillon, Prescott,

Butler, and Chatz are dismissed.  Helms' motion to quash service of process is

stricken as moot.  In addition, Paragraph 15J of the second amended complaint will

be redacted on the docket.


Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 2, 2012